[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Duncan v. Chambers-Smith*, Slip Opinion No. 2025-Ohio-978.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-978

THE STATE EX REL. DUNCAN, APPELLANT, *v.* CHAMBERS-SMITH ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Duncan v. Chambers-Smith*, Slip Opinion No. 2025-Ohio-978.]

*Mandamus—Jail-time credit—Appellant failed to establish entitlement to writ—Alleged errors regarding award of jail-time credit not cognizable in mandamus—Court of appeals' judgment affirmed.*

(No. 2024-0518—Submitted January 7, 2025—Decided March 25, 2025.)

APPEAL from the Court of Appeals for Franklin County, No. 23AP-66, 2024-Ohio-926.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellant, Johnny T. Duncan, appeals the Tenth District Court of Appeals' judgment denying his complaint for a writ of mandamus against appellees, the Ohio Department of Rehabilitation and Correction, Director Annette Chambers-Smith, and the department's Bureau of Sentence Computation (collectively, "ODRC"). Duncan had sought a writ of mandamus ordering ODRC to, among other things, recognize that his sentencing entry was silent about the amount of jail-time credit to which he was entitled and contact the trial court concerning the proper calculation of his jail-time credit. The court of appeals denied relief, finding that Duncan has an adequate remedy in the ordinary course of the law by filing a motion in the trial court for determination of his jail-time credit, as authorized by R.C. 2929.19(B)(2)(g). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Between 1991 and 1992, Duncan pleaded guilty to offenses in three criminal cases in the Clark County Court of Common Pleas. In *State v. Duncan*, Clark C.P. No. 91-CR-367, Duncan pleaded guilty to charges of aggravated robbery, robbery, felonious assault, and drug abuse, and he was sentenced to 7 to 25 years in prison. In *State v. Duncan*, Clark C.P. Nos. 91-CR-436 and 92-CR-218, Duncan entered into a plea agreement with the State, under which he pleaded guilty to two counts of aggravated murder, with specifications, and other offenses. In those two cases, Duncan was sentenced to 30 years to life in prison and 20 years to life in prison, respectively, to be served concurrently to one another, and to be served consecutively with the sentence imposed in case No. 91-CR-367. All told, Duncan was sentenced to an aggregate prison term of 37 years to life in the three cases. The judgment entries of conviction were silent on how much jail-time credit applied to Duncan's sentences.

**{¶ 3}** In May 2022, Duncan asked the Bureau of Sentence Computation (the "bureau") how much jail-time credit he had. Bureau personnel informed Duncan that he had been granted 398 days of jail-time credit.

**{¶ 4}** In December 2022, Duncan asked the bureau for records related to his jail-time credit. According to Duncan, he had attempted to get booking records directly from the Clark County Sheriff's Office but was informed that the sheriff's office had disposed of booking records from 1991 and 1992 in accordance with its records-retention policy. Duncan therefore asked the bureau for a copy of the sheriff's office's booking records that were in its possession. In his request, Duncan stated that he intended to file a "motion for jail-time credit" with the trial court and needed the booking records to file with his motion.

**{¶ 5}** The bureau responded to Duncan with copies of sheriff's-office records from 1991 and 1992. According to the records, Duncan had accumulated 165 days of jail-time credit for *State v. Duncan*, Clark C.P. No. 91-CR-367, and a total of 330 days of credit for *State v. Duncan*, Clark C.P. Nos. 91-CR-436 and 92-CR-218.

**{¶ 6}** In January 2023, Duncan filed a complaint for a writ of mandamus in the Tenth District. The complaint is not entirely clear, but Duncan appears to be challenging the bureau's reliance on records and information other than the trial court's sentencing entries in determining the amount of jail-time credit that he had been granted. Duncan invoked DRC Policy 52-RCP-01 as a basis for his requested relief in mandamus. That policy, Duncan argues, requires ODRC to review commitment papers for their accuracy and "'[i]f inaccuracies exist, the offender shall not be accepted, and the committing court shall be contacted immediately,'" quoting DRC Policy 52-RCP-01.

**{¶ 7}** Duncan sought a writ of mandamus ordering ODRC to (1) apply the trial court's sentencing entries "as they are written," (2) "disavow and discontinue" using the jail-time-credit calculation that he claims was predicated on information

from the sheriff's office, (3) cease its violation of the "mandatory provisions" of this court's decisions, and (4) comply with DRC Policy 52-RCP-01 by "contact[ing] the committing court immediately." The court of appeals referred the case to a magistrate and the parties submitted evidence and merit briefs. Duncan also filed a separate motion for summary judgment.

**{¶ 8}** The magistrate recommended that the court deny the writ and deny Duncan's summary-judgment motion as moot. 2024-Ohio-926, ¶ 32 (10th Dist.). The magistrate determined that Duncan's petition was based on his claim that an error was made in the determination of his jail-time credit. *Id.* at ¶ 27, 30. Such a claim failed in mandamus as a matter of law, the magistrate found, because Duncan had an adequate remedy in the ordinary course of the law to correct any error in the calculation of jail-time credit—namely, a motion in the trial court for determination of his jail-time credit under R.C. 2929.19(B)(2)(g)(iii). *Id.* at ¶ 29-31.

**{¶ 9}** Duncan objected to the magistrate's decision. The court of appeals unanimously overruled the objection and denied the writ. *Id.* at ¶ 11. The court of appeals agreed with the magistrate that mandamus was not available because Duncan had an adequate remedy in the ordinary course of the law to challenge the determination of his jail-time credit. *Id.* at ¶ 8-10. Duncan appealed to this court as of right.

## II. ANALYSIS

### A. Standard of Review

**{¶ 10}** We review de novo the court of appeals' grant of summary judgment in a mandamus action. *State ex rel. Phelps v. McClelland*, 2020-Ohio-831, ¶ 11. To obtain a writ of mandamus, Duncan must establish by clear and convincing evidence a clear legal right to the requested relief, a clear legal duty on the part of ODRC to provide it, and the lack of an adequate remedy in the ordinary course of the law. *Id.*

### B. Calculation of Jail-Time Credit Is Not Cognizable in Mandamus

{¶ 11} Duncan's mandamus complaint is premised upon ODRC's having relied on records from the Clark County Sheriff's Office to calculate the jail-time credit applicable to his sentence. Duncan contends that ODRC was prohibited by law from imposing an amount of jail-time credit that was not judicially determined by the trial court. He also argues that ODRC's determination of jail-time credit violates his plea agreement with the State. Therefore, Duncan insists, he is entitled to a writ of mandamus ordering ODRC to stop relying on sheriff's records for calculating his jail-time credit and to instead "contact the committing court immediately."

{¶ 12} The court of appeals correctly rejected Duncan's claim because he has an adequate remedy in the ordinary course of the law to challenge ODRC's calculation of his jail-time credit. Under R.C. 2929.19(B)(2)(g)(iii), the sentencing court retains jurisdiction to correct any error in a determination of jail-time credit. And "[t]he offender may, at any time after sentencing, file a motion in the sentencing court to correct any error made in making a determination [of jail-time credit], and the court may in its discretion grant or deny that motion." *Id.* Accordingly, alleged errors regarding an award of jail-time credit are not cognizable in mandamus; instead, the inmate may raise that issue in a motion for determination of jail-time credit under R.C. 2929.19(B)(2)(g)(iii). *State ex rel. Sands v. Culotta*, 2021-Ohio-1137, ¶ 12; *State ex rel. Williams v. McGinty*, 2011-Ohio-2641, ¶ 2.

{¶ 13} Moreover, Duncan's reliance on DRC Policy 52-RCP-01 as a source of a purported legal duty enforceable in mandamus is misplaced. Specifically, Duncan relies on the provision requiring a prison's records officer to "[r]eview the commitment papers to ensure that they are certified, valid and accurate" and that "[i]f inaccuracies exist, the offender shall not be accepted, and the committing court shall be contacted immediately," DRC Policy 52-RCP-01. But Duncan does not

explain why this policy applies to him; on its face, the policy applies to procedures related to newly committed offenders. Regardless, we have previously rejected mandamus claims based on DRC Policy 52-RCP-01 because "[a]n internal policy of [DRC] does not create a legal duty enforceable in mandamus." *State ex rel. Ellis v. Chambers-Smith*, 2024-Ohio-1615, ¶ 13; *see also State ex rel. Shie v. Ohio Adult Parole Auth.*, 2022-Ohio-270, ¶ 11 (finding that the relator who relied "solely on [DRC] Policy 105-PBD-09 as the source of the alleged duty," was not entitled to mandamus relief because "[a]n internal policy of an agency does not create a legal duty enforceable in mandamus").

### C. Duncan's Argument for a New Sentencing Entry

{¶ 14} On appeal, Duncan raises another challenge to the conclusion that he has an adequate remedy in the ordinary course of the law by filing a motion in the trial court for determination of his jail-time credit. Based on the evidence presented in the court of appeals, Duncan posits a new theory—that there has never been a final, appealable order of conviction in his criminal cases.

{¶ 15} Duncan bases his theory on the fact that ODRC did not submit certified copies of the judgment entries of conviction to support its calculation of jail-time credit. Rather, ODRC submitted certified copies of entries that are signed by the prosecuting attorney but show only a typed electronic signature of the trial judge (i.e., "/s/ John W. Henderson").[1] Thus, Duncan posits, there is no final, appealable order signed by the trial judge. Absent a final, appealable order, Duncan argues that he does not have an adequate remedy in the ordinary course of the law to seek a modification of his jail-time credit in the trial court. He therefore argues that we should reverse the judgment of the court of appeals and remand with

---

1. Though ODRC does not explain them as such, it would appear that ODRC filed as evidence certified copies of the prosecutor's *proposed* judgment entries filed with the trial court on January 16, 1992, and May 6, 1992, respectively, instead of the final judgment entries signed by the trial judge and entered on January 17, 1992, and May 8, 1992, respectively.

instructions to issue a writ of mandamus ordering ODRC to "'contact the committing court immediately' for the purpose of procuring a ratified judgment of conviction and sentence" consistent with Crim.R. 32(C), R.C. 2505.02, and *State v. Lester*, 2011-Ohio-5204.[2]  (Boldface deleted.)

**{¶ 16}** Duncan raised this same argument in his objections to the magistrate's decision, but the court of appeals did not address it.  Nonetheless, we reject the argument for two reasons.

**{¶ 17}** First, Duncan is seeking relief on appeal that he did not seek in his complaint.  Duncan's complaint was based on the premise that the trial court had entered final judgments of conviction, albeit without specifying the jail-time credit to which he was entitled.  Duncan sought a writ of mandamus ordering ODRC to (1) apply the trial court's sentencing entries "as they are written," (2) "disavow and discontinue" using the jail-time-credit calculation ODRC received from the Clark County Sheriff's Office, (3) cease violating *State ex rel. Fraley v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-4410, and *Williams*, 2011-Ohio-2641, and (4) comply with DRC Policy 52-RCP-01.  Now on appeal, Duncan asks this court for a different writ: to order ODRC to "contact the committing court immediately" for the purpose of obtaining a final, appealable order.  But Duncan cannot obtain relief that he did not request in his complaint.  *See State ex rel. Gibbs v. Concord Twp. Trustees*, 2003-Ohio-1586, ¶ 36-37 (11th Dist.) (finding that the trial court did not err in denying a writ for mandamus because the court could not have granted relief that was not requested in the mandamus complaint); *see also State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd. of Edn.*, 1996-Ohio-47, ¶ 19 (declining to address a new claim raised in merit briefing when the relator had not sought leave to amend his complaint to add the claim).

---

2. In *Lester*, we held that a final, appealable order of conviction requires (1) the trial court's statement of the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the entry on the journal by the clerk.  *Lester* at ¶ 11.

**{¶ 18}** Second, Duncan's theory has no factual merit on the record before us. Duncan himself filed copies of the trial court's final judgment entries of conviction, which are signed by the trial-court judge. Thus, even if Duncan had pleaded a claim for a writ of mandamus directing the trial court to enter a final, appealable order of conviction, he did not show a clear legal right to such relief.

### III.  CONCLUSION

**{¶ 19}** Duncan failed to establish his entitlement to a writ of mandamus, and we therefore affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

_____

Johnny T. Duncan, pro se.

Dave Yost, Attorney General, and Andrew Gatti, Assistant Attorney General, for appellees.

_____