[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Siebold v. Columbus City Schools Bd. of Edn.*, Slip Opinion No. 2025-Ohio-5245.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5245

THE STATE EX REL. SIEBOLD *v.* COLUMBUS CITY SCHOOLS BOARD OF EDUCATION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Siebold v. Columbus City Schools Bd. of Edn.*, Slip Opinion No. 2025-Ohio-5245.]

*Mandamus—Schools—Public school district's board of education has been providing under R.C. 3327.02(E)(2) the interim transportation to nonpublic school that student's parent seeks to compel—Voluntary-cessation exception to mootness doctrine inapplicable because parent seeks an order compelling school board to perform an act that the law requires rather than an order stopping board from engaging in certain conduct—Cause dismissed as moot.*

(No. 2024-1263—Submitted July 8, 2025—Decided November 25, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER,

DeWine, Brunner, Deters, Hawkins, and Shanahan, JJ.

**Per Curiam.**

{¶ 1} During the summer before the 2024-2025 school year, respondent, the Columbus City Schools Board of Education, passed a resolution of impracticality stating that it would not provide transportation for certain students living within the district who attended private or charter schools. Relator, Marrisa Siebold, filed this action for a writ of mandamus ordering the school board to comply with its obligation under R.C. 3327.02 to provide transportation for Siebold's minor child, who attends Tree of Life Christian Schools Middle School.

{¶ 2} We denied the school board's motion to dismiss and granted an alternative writ, ordering the submission of evidence and briefs. 2024-Ohio-5522. Siebold has submitted evidence indicating that the board began providing transportation for her child in October 2024. In addition to its evidence and merit brief, the board has filed objections to certain evidence filed by Siebold. Both parties have also moved for leave to submit revised evidence.

{¶ 3} We grant the parties' motions for leave to file revised evidence. But because the evidence shows that the school board has provided the relief requested in Siebold's mandamus complaint, we dismiss this case as moot and overrule as moot the board's evidentiary objections.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Transportation for Charter- and Private-School Students

{¶ 4} Under R.C. 3327.01, an Ohio public school district board of education "shall provide transportation" to and from school for students in grades kindergarten through eight who live more than two miles from the school they attend. This obligation generally extends to students attending private and charter

schools.[1]  *Id.*  A school district is not, however, required to transport students to and from a private or charter school under the following circumstances:

> A board of education shall not be required to transport elementary or high school pupils to and from a nonpublic or community school where such transportation would require more than thirty minutes of direct travel time as measured by school bus from the public school building to which the pupils would be assigned if attending the public school designated by the district of residence.
>
> Where it is impractical to transport a pupil by school conveyance, a board of education may offer payment, in lieu of providing such transportation in accordance with section 3327.02 of the Revised Code.

R.C. 3327.01.

{¶ 5} Before a school board may offer payment in lieu of transportation because of impracticality, it must consider six factors:

> (1) The time and distance required to provide the transportation;
>
> (2) The number of pupils to be transported;
>
> (3) The cost of providing transportation in terms of equipment, maintenance, personnel, and administration;
>
> (4) Whether similar or equivalent service is provided to other pupils eligible for transportation;

---

1. R.C. 3327.01 uses the term "nonpublic school," whereas Siebold uses the terms "private school" and "charter school."  We use Siebold's terminology.

(5) Whether and to what extent the additional service unavoidably disrupts current transportation schedules; [and]

(6) Whether other reimbursable types of transportation are available.

R.C. 3327.02(A). Based on its consideration of the above six factors, a school board "may pass a resolution declaring the impracticality of transportation." R.C. 3327.02(B). But this determination "shall be made not later than thirty calendar days prior to the district's or school's first day of instruction." *Id.* In addition, the board must issue a letter to the affected student's parent or guardian, the private or charter school in which the student is enrolled, and the Department of Education and Workforce ("department" or "DEW") "with a detailed description of the reasons" the board made the impracticality determination. *Id.*

{¶ 6} After passing a resolution of impracticality, a school board "shall offer to provide payment in lieu of transportation." R.C. 3327.02(C). The offer must inform the student's parent or guardian of the right either to accept the offer or to reject it and instead request mediation. R.C. 3327.02(C)(1)(b). If the parent or guardian rejects payment and requests mediation, the department must conduct the mediation. R.C. 3327.02(E)(1)(a). If mediation does not resolve the dispute, the department must then conduct an administrative hearing under R.C. Ch. 119, after which it may approve the payment in lieu of transportation or order the school district to provide transportation. R.C. 3327.02(E)(1)(b). The department's decision "is binding in subsequent years and on future parties in interest provided the facts of the determination remain comparable." *Id.*

{¶ 7} Meanwhile, during the mediation and subsequent appeal process, the school district "*shall* provide transportation for the pupil" from the time mediation is requested until the matter is resolved in mediation or the conclusion of the administrative hearing. (Emphasis added.) R.C. 3327.02(E)(2). The statute also

imposes consequences for a school district that does not provide the transportation required by R.C. 3327.02(E)(2). If a school district "has failed or is failing to provide transportation" pending the outcome of the mediation and administrative-hearing process, "the department shall order the school district . . . to pay to the pupil's parent, guardian, or other person in charge of the pupil, an amount equal to fifty per cent of the cost of providing transportation as determined by the board or governing authority," not to exceed $2,500. R.C. 3327.02(F)(1). If a school district fails to comply with an order to pay the amount determined under R.C. 3327.02(F)(1), the department "shall deduct the amount that the board is required to pay under that order from any pupil transportation payments the department makes to the school district board" under other provisions of law. R.C. 3327.02(F)(2). In turn, the department uses the money withheld from the school district to pay private and charter schools attended by the affected students. *Id.*

### B. Alleged Failure to Comply with R.C. 3327.02

{¶ 8} In response to a bus-driver shortage, the Columbus City Schools Board of Education in February 2024 began to evaluate the potential impact of a determination that transportation would be impractical for certain students within the district for the 2024-2025 school year. The board held public meetings in March 2024, at which it made known its intent to declare transportation to be impractical under R.C. 3327.02 for certain students before the 2024-2025 school year. By June 2024, the board had determined that it would be impractical to transport an unspecified number of students enrolled in charter and private schools. According to the board, it then notified families affected by the impracticality determinations and offered payment in lieu of transportation.

{¶ 9} The 2024-2025 academic year for Columbus City Schools began on August 21, 2024. Thus, under R.C. 3327.02, the latest day on which the district's school board could make an impracticality determination under R.C. 3327.02 was July 22, 2024. Despite the statutory deadline, the board made impracticality

determinations affecting approximately 1,380 students during August 2024. Siebold did not receive notice of the impracticality determination as to her child until after the school year had already begun. For its part, the district states that impracticality determinations were made after June 2024 because of belated receipt of transportation requests and related information from charter schools, private schools, and families of students.

{¶ 10} Siebold rejected the school board's offer of compensation and requested mediation.

### C. This Mandamus Action

{¶ 11} Siebold commenced this action on September 10, 2024. As of that date, Siebold's requested mediation had not occurred. Nor had the school board provided interim transportation pending the mediation process, as required by R.C. 3327.02(E)(2). In her complaint, Siebold requested a writ of mandamus requiring the school board to provide transportation to and from school until the transportation dispute was resolved under R.C. 3327.02(E)(1)(a) or (b). We denied the school board's motion to dismiss, ordered the board to file an answer, and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-5522. In addition to its answer, evidence, and merit briefing, the board has filed objections to certain evidence submitted by Siebold, to which she responded.

{¶ 12} According to the school board, of the families affected by its impracticality determinations in 2024, the families of 674 students accepted compensation in lieu of transportation and the families of 175 students requested mediation. Of the families of 175 students who requested mediation, the board states, the families of 102 students were "routed and offered" interim transportation. Siebold's child is one of the 102 students whose families were informed that their student would begin receiving interim transportation in October 2024. Siebold does not dispute that transportation has been provided to her child since October 2024.

## II. ANALYSIS

### A. Motions for Leave to File Revised Evidence

{¶ 13} Both parties timely filed evidence in this case in December 2024 and between them have filed four motions for leave to file revised evidence. Siebold first seeks leave to revise her evidence by adding Exhibit E, which is a letter she received from Rodney Stufflebean, Columbus City Schools' executive director of transportation, on May 28, 2025. The letter provided notice to Siebold that the school board had determined under R.C. 3327.02 that it would be impractical to provide school transportation for her child. Siebold proffers Exhibit E as evidence that this case is not moot.

{¶ 14} The school board also filed a motion for leave to file revised evidence. The board proffers an affidavit from Justin M. Dortsch, an attorney at Columbus City Schools' Office of General Counsel, along with four exhibits. According to the board, the evidence shows that a mediation was scheduled and that Siebold did not attend. In response, Siebold filed another motion to file revised evidence, seeking leave to file Exhibit F. Exhibit F is a June 18, 2025 affidavit in which Siebold explains that she missed the mediation because DEW sent her the notice only by email, which she did not read, because it was from an unfamiliar sender.

{¶ 15} None of these three motions for leave to file revised evidence is opposed. And there is no apparent prejudice to either party in admitting the revised evidence. We therefore grant Siebold's motions for leave to file Exhibits E and F and the board's motion to file the Dortsch affidavit and exhibits as revised evidence under S.Ct.Prac.R. 3.13(B)(3). *See State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 13 (granting a relator's unopposed motion for leave to file a revised reply brief under S.Ct.Prac.R. 3.13(B)(3) when no prejudice would result).

{¶ 16} Siebold filed a third motion for leave to file revised evidence, seeking to add an Exhibit G, which purports to be a letter sent by Stufflebean in

August 2025. The letter states that operational constraints in the school district, including a continued bus-driver shortage, rendered the district unable to provide transportation services during mediation "when it has determined that a student is impractical to transport." For such students, the letter says that it would pay any compensation ordered by DEW. The board opposes Siebold's motion for leave to file the proposed Exhibit G, contending it is not admissible because it does not pertain to the impracticality determination at issue in this case.

{¶ 17} We deny Siebold's motion to file the proposed Exhibit G for three reasons. First, the exhibit is unauthenticated. Second, Siebold's motion does not state that this letter pertained to her child's transportation (or a lack thereof). Finally, a close reading of Stufflebean's letter shows that it does not relate to the impracticality determination made in this case. To the contrary, the letter appears to be directed toward a different impracticality determination made during mediation.

### B. The Mandamus Action Is Moot

{¶ 18} To obtain a writ of mandamus, Siebold must establish by clear and convincing evidence (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the school board to provide the relief, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Love v. O'Donnell*, 2017-Ohio-5659, ¶ 3.

{¶ 19} The school board argues that this case is moot because there is no longer a justiciable dispute. In an October 2024 affidavit, Stufflebean attested that (1) the district had "routed, with the intent to transport approximately 102 students" who were in mediation with DEW, with transportation to begin on October 7, 2024, and (2) Siebold's child was one of the 102 students who would be transported.

{¶ 20} Siebold does not dispute Stufflebean's affidavit. In her own affidavit submitted as evidence in this case, Siebold confirms that her child started receiving school transportation on October 9, 2024. Siebold complains that the transportation

has routinely been late, causing her child to be exposed to cold weather at the bus stop and to be tardy to school on numerous occasions. Siebold also complains that neither the school board nor the transportation service has communicated with her effectively about changes made to bus routes or pickup times. However, Siebold does not dispute that transportation was being provided. And neither party has submitted evidence indicating that the school board stopped providing transportation for Siebold's child at any time during the 2024-2025 school year.

{¶ 21} "A writ of mandamus will not issue to compel an act already performed." *State ex rel. Kirk v. Burcham*, 1998-Ohio-224, ¶ 7. Thus, the respondent's performance of the act requested in a mandamus action generally renders the action moot. *State ex rel. Law Office of the Montgomery Cty. Pub. Defender v. Rosencrans*, 2006-Ohio-5793, ¶ 15. In this case, the evidence submitted by the parties shows that Siebold's child is among the 102 students whose families requested mediation and for whom the school board began providing transportation in October 2024. While Siebold complains about the quality of the transportation provided, she does not dispute that the board has been providing the transportation required by R.C. 3327.02(E)(2). Because the action that Siebold sought to compel in her mandamus complaint has been performed—i.e., the provision of interim school transportation pending mediation—this case is moot.

{¶ 22} Siebold argues against dismissal of this case as moot, contending that the "voluntary cessation" exception to the mootness doctrine applies here. Under this exception, a party's voluntary cessation of a challenged practice renders the case moot if "the party can show that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Highland Tavern, L.L.C. v. DeWine*, 2023-Ohio-2577, ¶ 25 (lead opinion), quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 190 (2000). Siebold argues that the school board has not carried this burden, because Stufflebean's testimony shows that the board could at any time choose to "take the penalty rather

than provide transportation." Thus, Siebold says, it is reasonable to expect that the board will resume its unlawful refusal to provide interim transportation after finding it uneconomical to continue providing transportation. For the reasons explained below, we reject Siebold's argument.

{¶ 23} None of the cases Siebold cites in invoking the voluntary-cessation exception arose in a mandamus case in which the respondent had performed the act that the relator had requested in the mandamus complaint. *Highland Tavern* involved a declaratory-judgment action challenging the constitutionality of an administrative rule that had expired after the case was filed. *Highland Tavern* at ¶ 24. The matter was dismissed as moot, *id.* at ¶ 34, with this court's lead opinion explicitly rejecting application of the voluntary-cessation exception, *id.* at ¶ 29.

{¶ 24} Siebold also cites *Knox v. Serv. Emps. Internatl. Union, Local 1000*, 567 U.S. 298 (2012), which was an appeal in a case filed under 42 U.S.C. 1983, *see* 628 F.3d 1115 (9th Cir. 2010). In *Knox*, a class of nonunion employees alleged that they had been forced to contribute money to funds used for political expenditures. Applying the voluntary-cessation exception to the mootness doctrine, the United States Supreme Court rejected the union's argument that the case had been mooted by the union's offer of a full refund to all class members. *Id.* at 307-308. And *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199 (1968), also cited by Siebold, was an appeal from the dismissal of an enforcement action that the federal government brought, alleging that certain activities of an association of suppliers violated antitrust law. *Id.* at 200-201. The Supreme Court held that the case was not mooted by the association's cessation of the challenged conduct. *Id.* at 202-204.

{¶ 25} In each of the above cases, the voluntary-cessation exception was raised in the context of an action seeking to prohibit certain conduct that the defendant later ceased. A mandamus action bears no resemblance to these cases. Rather than seeking to stop a defendant from engaging in certain conduct, the

relator in a mandamus case seeks an order compelling the respondent to perform an act that the law requires. R.C. 2731.01 ("Mandamus is a writ . . . commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."). Since the writ exists to command the performance of an act required by law, *id.*, the writ will *not* issue to compel an act that has already been performed, *State ex rel. Madsen v. Jones*, 2005-Ohio-4381, ¶ 11.

{¶ 26} In the end, Siebold has cited no case in which this court (or any Ohio court) has applied the voluntary-cessation exception to the mootness doctrine in the context of an extraordinary action in mandamus in which the respondent has provided the relief requested. Siebold asks this court to apply the exception because she fears that the school board will fail to comply with R.C. 3327.02(E)(2) in the future. But "a writ of mandamus will not issue to compel the general observance of laws in the future." *Kirk*, 1998-Ohio-224, at ¶ 10.

{¶ 27} Siebold asserts two other arguments against dismissing this case on mootness grounds. In a footnote in her merit brief, she argues that her potential recovery of damages under R.C. 2731.11 and of her attorney fees preclude the dismissal of this case as moot. *See id.* ("If judgment in a proceeding for a writ of mandamus is rendered for the plaintiff, the relator may recover the damages which he has sustained . . . ."). These arguments lack merit. Siebold requested neither damages nor attorney fees in her complaint. *See State ex rel. Duncan v. Chambers-Smith*, 2025-Ohio-978, ¶ 17 (concluding that the relator was not entitled to relief that was not requested in his mandamus complaint). Moreover, regarding damages, R.C. 2731.11 allows recovery only when a writ of mandamus is granted. And as explained above, Siebold cannot prevail on her mandamus claim, because the act she requested has already been performed. *See Madsen* at ¶ 11.

{¶ 28} Siebold's revised evidence that we have admitted does not change our determination that this case is moot. Siebold's new affidavit and exhibit do not refute that her child began receiving interim school transportation under R.C.

3327.02(E)(2) in October 2024. And to the extent that Siebold offers the new evidence as support for her argument that the school board might again refuse to provide interim transportation, the argument lacks merit for the same reason we have stated above: "[A] writ of mandamus will not issue to compel the general observance of laws in the future," *Kirk* at ¶ 10.

### III. CONCLUSION

{¶ 29} We grant Siebold's motions for leave to file Exhibits E and F and the board's motion to file Dortsch's affidavit and the accompanying exhibits as revised evidence under S.Ct.Prac.R. 3.13(B)(3). We deny Siebold's motion for leave to file the proposed Exhibit G. Finally, we dismiss this action as moot and overrule as moot the school board's evidentiary objections.

Cause dismissed as moot.

_____

American Center for Law and Justice, Donn Parsons, Benjamin P. Sisney, Nathan J. Moelker, and Christina Compagnone; and Ohio Christian Education Network and Corrinne Vidales, for relator.

Amundsen Davis, L.L.C., and John C. Albert; and Columbus City Schools, James A. Barnes, General Counsel, and Adam C. Sims, for respondent.

_____